# COUNTY OF FRANKLIN.

### INHABITANTS OF JAY *versus* INHABITANTS OF CARTHAGE.

An officer, while in office, may amend his records according to the facts, provided the rights of third persons are not thereby prejudiced.

To prove the doings of selectmen, in committing a person to the Insane Hospital, their original record is admissible, as well as a transcript, or duly authenticated copy of it.

The town from which a person is legally committed to the Insane Hospital, is authorized by statute to recover the expenses incurred of the town in which such person has his legal settlement.

To entitle the plaintiffs to recover in such case, they must give notice to the defendants within three months after such expenses were paid, as in ordinary pauper cases.

When no payment is made by the defendants, a notice once given is sufficient to charge them for all sums expended for three months prior to such notice, and all sums afterward accruing up to the commencement of the action, unless barred by the statute of limitations.

When such notice is signed by the *selectmen*, and it does not appear that other persons had been chosen as *overseers of the poor*, it will be presumed that the selectmen acted in that capacity, and the notice be held to be sufficient.

The same presumption applies when the notice is directed to the *selectmen* of the defendant town. It will be held valid, unless it appears that the *selectmen* were not, *ex officio*, *overseers of the poor*.

From the known practice of towns in this State to choose but three selectmen, it will be presumed that that number was chosen, unless the contrary appears.

A judgment on *nonsuit* in a former case between the same parties, for the same cause of action, is no bar to a second suit, when it appears that the former case was not tried on the merits.

ON REPORT by GOODENOW, J.

ASSUMPSIT to recover of the defendants the expenses of committing to the Insane Hospital, and amounts paid at said Hospital, for the support of Lydia B. Smith, wife of Laban

Smith, whose settlement was alleged to be in the defendant town.

The defendants denied all the allegations in the declaration, except the payment of the amounts alleged to have been paid.

The plaintiffs introduced *Laban Smith*, who testified that he was married to Lydia B. Smith in 1848, and moved into Carthage in July of the same year, and resided there until October, 1854, without intermission, or receiving aid as a pauper.

Also, *Joshua Lake*, who testified that a notice to the defendants was mailed at North Jay or Wilton, in April or May, 1857, and was afterwards produced by the defendants in another action between these parties. He also testified to other notices, sent after payments made subsequently to the first notice, but, in the view taken by the Court, this evidence does not become material.

Also, the notice spoken of by the last witness. It was directed to the *selectmen* of Carthage, and was signed by two persons calling themselves *selectmen* of Jay.

Also, the original record of the proceedings of two of the selectmen of Jay in committing the said Lydia B. Smith to the Insane Hospital. The record purported to be amended by said selectmen, while still in office.

The defendants introduced a certified copy of said record as it was before it was amended.

Also, the record of a judgment, in a case between the same parties, in which the plaintiffs sued for the first item in the account sued for in this action. In that case judgment was rendered for the defendants on a *nonsuit*.

The plaintiffs introduced parol evidence showing that said judgment was not rendered on the merits.

The case was then submitted to the full Court upon so much of the evidence as was legally admissible.

Only so much of the evidence is here reported as bears on the questions of law, raised in the case, and decided by the Court.

*R. Goodenow,* for plaintiffs.

The record of the doings of the selectmen, being in conformity with the requirements of the statute, is proof of the facts therein stated. *Eastport* v. *East Machias,* 35 Maine, 402; *Eastport* v. *Belfast,* 40 Maine, 262.

The amendment of this record, (if necessary,) was properly made.

The judgment in the former action is no bar to this, inasmuch as that case was not decided on its merits. *Lord* v. *Chadbourne,* 42 Maine, 443, and cases there cited.

*J. S. Abbott,* for defendants.

I. There is no *legal* evidence in the case, of the alleged inquisition and commitment. The selectmen are required to keep a record and furnish a copy, &c.

The only *legal* evidence is a copy of the record authenticated by the selectmen. The original document is not admissible. *Eastport* v. *East Machias,* 35 Maine, 402.

The copy introduced by the plaintiffs is not sufficient. It does not appear by that, that the selectmen followed the requirements of the statute.

It does not appear, even if the original record is admissible, that the proceedings were in accordance with the statute.

It does not appear that more than *two* selectmen were present and acting.

It would seem that, inasmuch as they act judicially in such cases, that all must be present.

But in this case it does not appear, even, that a majority acted.

Towns may choose *three, five* or *seven* selectmen. There is no proof as to how many were chosen. The Court can no more conjecture that three were chosen, than that seven were. And the burden to show that a majority acted, being upon the plaintiffs, they must fail.

II. There was no legal notice proved. The notice was addressed to the *selectmen,* and signed by *two selectmen.* It

should have been addressed to the *overseers* and signed by the *overseers*.

III. The record of the judgment in the former case is a bar to this suit. The parol evidence introduced by plaintiffs, in relation to it, was not admissible. *Oxford* v. *Paris*, 33 Maine, 179; *Bangor* v. *Brunswick*, 33 Maine, 352.

The opinion of the Court was drawn up by

CUTTING, J.—That an officer, while in office, may amend his records, according to the facts, has been so long settled as to become, almost, an axiom of the law, subject, however, to certain limitations and reservations, as to the rights of third parties, which do not arise in this case.

A question has been raised, whether the original record was admissible, instead of a certified copy, and we have been referred to the case of *Eastport* v. *Machias*, 35 Maine, 402, where the converse of the proposition was urged by counsel; but the Court held that the doings of the selectmen "must be proved by the production of that record, or ·by a transcript or duly authenticated copy of it." An authority which is directly opposed to the party citing it, and which sustains the admissibility of the record.

The proceedings of the selectmen of *Jay* appear to have been conformable to the requirements of the statute, under which they were had; the insane person was legally committed to the hospital, and her expenses created an immediate liability on the plaintiffs, which they have discharged; and they now seek to recover the same of the defendants, in whose town such insane person had her settlement at the time, which they are authorized by the statute to do, "in the same manner as if incurred for the ordinary expenses of a pauper."

To recover such expenses, it is incumbent on the plaintiffs to show that they gave written notice to the defendants, within three months after such expenses were paid, of their claim for reimbursements. *Bangor* v. *Fairfield*, 46 Maine, 558.

It should not be inferred, however, that unless the claim due at the time of the first notice was paid by the party notified, any subsequent notice is necessary as preliminary to the recovery of subsequent advancements. In the case under consideration, no payments have been made by the defendants, and, therefore, if any notice has been legally proved, it will be sufficient to charge them for all sums expended three months prior to such notice, and all sums afterwards accruing, unless barred by the statute of limitations.

The plaintiffs contend, and have introduced evidence, if legally admissible, tending to show, that they have at four different times given such notices to the defendants, who, notwithstanding, insist that the proof is wholly defective, which proposition is to be considered.

*Joshua Lake,* a witness called by the plaintiffs, testified, that "the first notice was mailed at *North Jay* or *Wilton,* in April or May, 1857, and produced by the defendant town in another action between these parties." The original notice, (marked 3 in the report,) we understand, was produced at the trial, and thus identified by the witness, which sufficiently establishes the fact that it was received by the persons to whom directed.

But, it is urged that the notice was signed by the selectmen and not by the overseers, and therefore was not such an official notice as the statute requires.

By the ninth section of R. S., 1840, c. 5, each town, at the annual meeting in March or April, is required to choose " three, five or seven persons, inhabitants of the town, to be selectmen and overseers of the poor, when other persons shall not be chosen to that office." The statute of 1821, c. 122, § 3, of which the preceding section is a transcript, received a judicial construction in the case of *Garland* v. *Brewer,* 3 Maine, 198, to the effect, that when it does not appear that a town has elected any overseers, the presumption is, they had not, and the selectmen act in that capacity. This decision was cited with approbation and affirmed in *Ashby* v. *Lunenburg,* 8 Pick., 563.

It is true that, in *Rowe* v. *Beale*, 15 Pick., 123, the Court remark, that—" The statute having provided that, in certain cases, the functions of overseers shall be discharged by selectmen; when an act is done, *which, upon the face of it* indicates that it could only be done by the selectmen, acting as overseers, when there are no overseers, there is a sufficient notice that they were acting in that capacity." Now, upon the face of the notice under consideration, it appears that the selectmen were acting in a twofold capacity; *first*, as selectmen, in determining the insanity of the person and issuing the process of commitment to the hospital; and *secondly*, as overseers, in notifying the defendants of their proceedings and calling on them for reimbursement, thus strengthening the presumption that they were *ex officio* overseers.

*Again*, it is contended that the notice was improperly directed; it being to the selectmen instead of the overseers in the defendant town. But the same presumption which we have already considered as arising in favor of the plaintiffs, would equally attach to the defendant town, until it was repelled by some evidence of the existence of a board of overseers in addition to that of selectmen. The plaintiffs, in thus addressing their notice, assumed the responsibility, which, so far as the testimony discloses, or rather fails to disclose, was justifiable.

It is *further* contended that two of the selectmen only have acted, and that there is no evidence as to the number of the selectmen chosen by the town, whether three, five or seven, as authorized by statute. Under the circumstances, this is a very sharp point raised by defendants' counsel, and one probably not contemplated by the plaintiffs, when they agreed upon the report; and, if the point raised be successful, it will only disclose another instance of the folly of too readily withdrawing a good cause from the jury and the rulings of the Judge at *Nisi Prius*, and referring the same for a final decision to the law Court, on a report full of *latent* technical objections. But it is our duty to consider the question, and give the party raising it, all his legal rights and ad-

vantages, which we will now proceed to do in the language of the Court in *Nottingham* v. *Barrington,* 6 N. H., 306,— "it is objected, that the notice, of the sums expended for the support of the paupers, does not appear to have been signed by a major part of the selectmen. But, it is well known that towns in this State, very rarely, if ever, choose more than three selectmen, and we think it very safe to presume that there was no more than three selectmen in Nottingham, until the contrary is shown. We should the more readily act upon such a presumption in cases of this kind, because, if the fact be otherwise, in any case, it can easily be. shown by the records of the town. These notices are usually signed by two or three selectmen, and no one before *ever thought* of requiring evidence that they were a major part of the selectmen."

And, *finally,* the defendants rely upon the *nonsuit* in a former action as a bar to this. This proposition is equally untenable. See *Lord* v. *Chadbourne,* 42 Maine, 443 ; *Knox* v. *Waldoboro',* 5 Maine, 185.

> *Defendants defaulted for the items in account annexed, (except those of interest,) on which judgment is to be rendered with interest from the date of the writ.*

TENNEY, C. J., APPLETON, GOODENOW, DAVIS and KENT, JJ., concurred.